UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCHOOL DISTRICT OF THE
CITY OF PONTIAC, et al.,

               Plaintiffs,                        Civil Action No.
                                                 05-CV-71535-DT

vs.

                                               HON. BERNARD A. FRIEDMAN

MARGARET SPELLINGS,

               Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

        This matter is presently before the court on defendant's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) or (b)(6). Plaintiffs have responded, defendant has replied, and the court has heard oral argument. For the reasons stated below, the court shall grant the motion.

        The plaintiffs in this case include several school districts in three States (Michigan, Texas, Vermont), the National Education Association ("NEA"), and NEA-affiliates in ten states (Connecticut, Illinois, Indiana, Michigan, New Hampshire, Ohio, Pennsylvania, Texas, Utah and Vermont). The defendant is Margaret Spellings, in her official capacity as Secretary of the United States Department of Education.

        Plaintiffs allege that defendant, by enforcing various provisions of the No Child Left Behind ("NCLB") Act, is imposing unfunded mandates on the States, although unfunded mandates are prohibited by the statute. The case is well summarized in the introductory section of the complaint:

This is a lawsuit for declaratory and injunctive relief based upon Section 9527(a) of the No Child Left Behind Act ("NCLB"), which provides in full as follows:

> (a) General prohibition
> Nothing in this Act shall be construed to authorize an officer or employee of the Federal Government to mandate, direct, or control a State, local education agency, or school's curriculum, program of instruction, or allocation of State or local resources, or mandate a State or any subdivision thereof to spend any funds or incur any costs not paid for under this Act. [20 U.S.C. § 7907(a)]

Plaintiffs contend that the Secretary of Education is violating this "Unfunded Mandates Provision" by requiring states and school districts to comply fully with all of the NCLB mandates even though states and school districts have not been provided with sufficient federal funds to pay for such compliance. Plaintiffs further contend that by failing to honor the commitment made by the Unfunded Mandates Provision – namely, that the federal government would fund the mandates or not require compliance with them – the Secretary of Education is violating the Spending Clause of the United States Constitution.

Complaint, pp. 3-4. The complaint summarizes the "NCLB mandates" as follows:

> 32. The NCLB dictates that any state that accepts Title I funding must (a) revise the state's curriculum standards in core academic areas, (b) develop standardized tests aligned with the curriculum standards to measure the progress of public school students in meeting those standards, (c) require school districts to administer those tests to all but a very small group of students, (d) based on the performance of students on those tests, both overall and within specified subgroups (viz., major racial and ethnic groups, low income students, limited English proficiency students and disabled students), require school districts to determine whether schools, and whether the school districts themselves, are making AYP [adequate yearly progress] in improving student performance on those tests, (e) if schools and school districts are not making AYP, take certain specified actions against those schools and school districts, and, finally, (f) ensure that school staff (teachers and paraprofessionals) meet prescribed qualifications requirements. As detailed below, the costs of complying with these NCLB mandates are enormous, and far

2

exceed the limited increase in Title I federal funding that followed enactment of the NCLB.

Several pages of the complaint are devoted to demonstrating the shortfall between the costs of compliance and the federal funds appropriated. For example, regarding "curriculum and testing mandates," plaintiffs allege that Illinois will spend $15.4 million per year to develop and administer required tests, whereas the federal government currently gives Illinois $13 million per year for this purpose, a $2.4 million annual shortfall. Regarding "data collection, grading and reporting mandates," the complaint cites Anchorage (Alaska) and Jordan (Utah) as examples of school districts which had to spend more money just to collect, analyze and report data, than they received in total NCLB funds. The complaint also alleges that federal funding for required "technical assistance" is woefully inadequate. Connecticut, for example, received just $218,000 in 2005 to provide such assistance to 93 schools, whereas the actual cost of this mandate was over $18 million.

The complaint asserts two causes of action. The first alleges that defendant is violating the Spending Clause of the U.S. Constitution "by changing one of the conditions pursuant to which states and school districts accepted federal funds under the NCLB – viz., that states and school districts would not be required to spend any funds or incur any costs not paid for under this Act." The second cause of action makes the identical allegation but asserts a claim directly under the "unfunded mandate" section of the NCLB. For relief, plaintiffs request that the court:

> (1) Issue an order declaring that states and school districts are not required to spend non-NCLB funds to comply with the NCLB mandates, and that a failure to comply with the NCLB mandates for this reason does not provide a basis for withholding any federal funds to which they otherwise are entitled under the NCLB;
>
> (2) Enjoin defendant and any other officer or employee of ED from

3

withholding from states and school districts any federal funds to which they are entitled under the NCLB because of a failure to comply with the mandates of the NCLB that is attributable to a refusal to spend non-NCLB funds to achieve such compliance;

(3) Award to plaintiffs . . . costs, fees and other expenses incurred in prosecuting this lawsuit; and

(4) Order such other and further relief as this Court may deem appropriate.

In her motion to dismiss, defendant first argues that the court lacks subject matter jurisdiction because plaintiffs lack standing. Alternatively, defendant argues that the complaint should be dismissed for failure to state a claim because the section of the NCLB at issue, 20 U.S.C. § 7907(a), does not provide the relief plaintiffs seek.

"Standing doctrines are employed to refuse to determine the merits of a legal claim, on the ground that even though the claim may be correct the litigant advancing it is not properly situated to be entitled to its judicial determination. The focus is on the party, not the claim itself." 13 C. Wright & A. Miller, *Federal Practice and Procedure* § 3531, pp. 338-39 (1984). The Supreme Court has devised a three-part test for determining whether a plaintiff has standing:

It has been established by a long line of cases that a party seeking to invoke a federal court's jurisdiction must demonstrate three things: (1) "injury in fact," by which we mean an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court," and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the "prospect of obtaining relief from the injury as a result of a favorable ruling" is not "too speculative." These elements are the "irreducible minimum" required by the Constitution.

4

*General Contractors of Am. v. City of Jacksonville*, 113 S. Ct. 2297, 2301-2302 (1993). *See also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 375-76 (1982) (plaintiff must allege injury in fact, which means "distinct and palpable injuries that are fairly traceable to [defendants'] actions"). In the present case, defendant argue that plaintiffs have failed to allege or show (1) an "injury in fact," (2) causation, or (3) that the relief sought will redress the injury.

In particular, defendant argues that the NEA and its affiliates lack standing because they are alleging injury to third-parties – namely, States and school districts. The NEA-plaintiffs also allege that they suffer "stigma" and harm to their reputation when the schools they are associated with are found, under the NCLB, to be performing poorly. However, defendant cites solid authority, including *Allen v. Wright*, 468 U.S. 737, 755 (1984), for the proposition that stigma alone generally is not sufficient to confer standing. In response, the NEA-plaintiffs argue that they are not alleging stigma alone, but also direct harm to their members, caused by the fact that funding is now being diverted from NEA-supported programs to pay for NCLB requirements, such as testing. As for the plaintiff school districts, defendant argues that they are likewise asserting rights of third-parties – i.e., the States and all other school districts around the country. Although defendant acknowledges that the plaintiff school districts do allege injury to themselves, defendant argues that they are misinterpreting and misapplying the NCLB.

Plaintiffs note that at the pleading stage they need only allege facts in support of standing and, further, on a motion to dismiss the allegations of the complaint are accepted as true. Plaintiffs cite *Bennett v. Spear*, 520 U.S. 154, 168 (1997), for its statement that "general factual allegations of injury" are sufficient; and *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994), for the rule that a complaint should not be dismissed for lack of standing so

long as "relief could be granted under any set of facts that could be proved consistent with the allegations."

The court is persuaded that standing has been adequately alleged. Plaintiffs claim they are being directly harmed by the NCLB's "unfunded mandates." Defendant's arguments would more properly be raised in support of a motion for summary judgment. At the pleading stage, however, the court must accept the allegations in the complaint as true. Plaintiffs have met their "relatively light" burden of alleging injury, causation and redressability. Therefore, the court shall not dismiss the complaint for lack of standing.

Defendant's second argument is that the complaint should be dismissed for failure to state a claim. Defendant submits that plaintiffs are reading too much into the section of the NCLB cited in the complaint. As noted above, plaintiffs' entire case is based on 20 U.S.C. § 7907(a), section 9527(a) of the Act, which states:

> (a) General prohibition
> Nothing in this Act shall be construed to authorize an officer or employee of the Federal Government to mandate, direct, or control a State, local education agency, or school's curriculum, program of instruction, or allocation of State or local resources, or mandate a State or any subdivision thereof to spend any funds or incur any costs not paid for under this Act.

Defendant argues convincingly that this sentence simply means no federal "officer of employee" can require states or school districts to "spend any funds or incur any costs not paid for under this Act." This does not mean that *Congress* could not do so, which it obviously has done by passing the NCLB Act. Defendant also argues that it would make no sense for Congress to pass this elaborate statute – which does require many things of States and school districts as a condition of receiving federal education funds – if the States could avoid the requirements simply by claiming that they

6

have to spend some of their own funds in order to comply with those requirements.

The court is convinced by defendant's argument that plaintiffs' reading of the statute is defeated by inclusion of the words "an officer or employee of." If Congress had meant that federal funding would pay for 100% of all NCLB requirements, then the inclusion of these words would have been unnecessary. If Congress meant to prohibit "unfunded mandates" in the NCLB, it would have phrased 20 U.S.C. § 7907(a) to say so clearly and unambiguously. By including the words "an officer or employee of," Congress clearly meant to prohibit federal officers and employees from imposing additional, unfunded requirements, beyond those provided for in the statute. If, as plaintiffs contend, Congress intended to prohibit unfunded mandates, it would have omitted the words "an officer or employee of" or simply stated that the Federal Government will reimburse the States for all costs they incur in complying with the requirements of this statute. Congress has appropriated significant funding for NCLB requirements. *See* 20 U.S.C. § 6302(a). However, plaintiffs have pointed to no statutory provision other than § 7907(a) to support their argument that Congress intended for these requirements to be paid for *solely* by the federal appropriations.

In short, 20 U.S.C. § 7907(a) cannot reasonably be interpreted to prohibit Congress itself from offering federal funds on the condition that States and school districts comply with the many statutory requirements, such as devising and administering tests, improving test scores, and training teachers. The statute plaintiffs cite does not support their claim. Accordingly,

7

IT IS ORDERED that defendant's motion to dismiss the complaint pursuant to Fed.

R. Civ. P. 12(b)(6) is granted.

/s/ Bernard A. Friedman
Dated: 11/23/2005                    BERNARD A. FRIEDMAN
     Detroit, Michigan      CHIEF UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document
was served this date upon counsel of record
electronically and/or via first-class mail.

_____/s/ Patricia Foster Hommel_____
     Patricia Foster Hommel
     Secretary to Chief Judge Friedman

8